**AVERY DENNISON CORP., Plaintiff,**

v.

**FOUR PILLARS, et al., Defendants.**

**Misc. Nos. 99–58 (CKK/JMF), 99–86 (CKK/JMF).**

United States District Court, District of Columbia.

Oct. 14, 1999.

**MEMORANDUM**

FACCIOLA, United States Magistrate Judge.

This case is before me for resolution of (1) *Reed Smith Shaw & McClay's Objections to and Motion for Reconsideration of this Court's June 29, 1999 Orders*, and (2) *Bork & Associates' Motion for Reconsideration of* this Court's Show Cause and In Camera Production Orders [1].

On June 23, 1999, I ordered Reed Smith Shaw & McClay, LLP ("Reed Smith") and Bork & Associates ("Bork") *inter alia* to produce for my *in camera* review the documents which are the subject of Avery Dennison Corporation's ("Avery") *subpoena duces tecum* which had been served upon Reed Smith and Bork. Bork and Reed Smith moved to quash that *subpoena* but neither complied with Fed. R. Civ. 45(d)(2) which provides:

> (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Instead, Bork and Reed Smith insisted that the nature of the request in itself established that the *subpoena* sought production of materials protected from disclosure by the attorney-client and the attorney work product privileges. Neither, therefore, filed a "privilege log" which has become, by now, the universally accepted means of asserting privileges in discovery in the federal courts; the general objection that, for example, a request for production of documents calls for the production of documents which are privileged is condemned as insufficient.; *First American Corp. v. Al–Nahyan*, 2 F.Supp.2d 58, 63 n. 5 (D.D.C.1998)("In practical terms [Rule 26(b)(5)] means that the party resisting disclosure must produce some form of privilege log, although the degree of specificity required is dictated by the needs of the case."); *United States v. Exxon Corporation*, 87 F.R.D. 624, 637 (D.D.C.1980) ("A mere assertion of the [attorney-client] privilege, without description of the document tailored to the assertion, is insufficient. To ensure the proper invocation of the attorney-client privilege, the court will order, as with the deliberative privilege, the preparation of a

---

1. As explained herein, once I resolve the privilege question I will, if necessary, turn to the issues presented by *Motion of Reed Smith Shaw & McClay, LLP, to Quash Subpoena* and (4) *Bork & Associates' Motion to Quash.*

*Vaughn* [2]-like index"); EDNA SELAN EPSTEIN, THE ATTORNEY–CLIENT PRIVILEGE AND THE WORK–PRODUCT DOCTRINE, 434 (3d ed.1997) ("What was considered good practice [the practice of creating document indexes] has now become mandated by the rule ... Rule 26(b)(5) mandates producing a log of withheld documents."). *See Animal Legal Defense Fund, Inc. v. Department of the Air Force,* 44 F.Supp.2d 295 (D.D.C.1999) (A privilege log is "essential if this Court is to perform effectively its review of the agency's proffered exemptions.").

Confronted by a privilege claim without a log, and sensing that the number of documents at issue could not be great, I ordered their production for my *in camera* inspection. I have frequently done so. *See e.g., Evans v. Atwood,* 177 F.R.D. 1 (D.D.C.1997). I have found that counsel rarely provides more than minimal information in the logs they submit which usually tell me the date of the document, its author and recipient, and the briefest possible description of its contents ("Letter from client to attorney"). Finding such a log useless, I have instead cut to the quick and ordered the production of the documents at issue.

I did so here as well since no privilege log was produced whatsoever. Doing so was generous to Bork and Reed Smith. Failure to produce a privilege log may be deemed a waiver of the privilege. *First American Corp. v. Al–Nahyan,* 2 F.Supp.2d at 63 n. 5 (magistrate judge could permissibly base determination that privilege had been waived on failure to submit privilege log). *Accord: Bregman v. District of Columbia,* 182 F.R.D. 352, 363 (D.D.C.1998) ("[P]laintiff's failure to comply with Fed.R.Civ.P. 26(b)(5), requiring him to file a privilege log, bars in itself any claim of privilege, whatever its basis."). Because I had no reason to believe that there were a large number of documents and because I preferred to predicate my decision in the merits, I chose instead to review the documents themselves and ordered their production.

Bork and Reed Smith did not produce the documents, however, but instead moved for reconsideration of my order that they produce the documents at issue claiming that it was clearly erroneous of me to order that production without Avery making a showing of need for the documents it seeks.

Before addressing that contention, another point must first be made. The parties have to agree that two issues divide them, whether the *subpoena* subjects Bork and Reed Smith to an undue burden (Fed.R.Civ.P. 45(3)(A)(iv)) or requires disclosure of privileged or other protected matter and no exception or waiver applies. Fed.R.Civ.P. 45(3)(A)(iii). It is self evident that resolution of either moots resolution of the other. If the documents sought are privileged, as Bork and Reed Smith insist they clearly are, they cannot compelled to produce them even if they can be produced without an undue burden. It therefore makes sense to resolve one first since it may eliminate the need to resolve the other. For any one to say that it is arbitrary to resolve the privilege question first is like saying a man is arbitrary when, starting on a journey, he steps off on his right rather than his left foot.

I make that point because Bork and Reed Smith read my order as already resolving issues in this case relating to whether the *subpoena* should be quashed. I assure them I have done no such thing. I consider all issues to be open and will consider them if necessary once I have resolved the privilege question. I include within those open issues Avery's assertion that Judge Nugent has already found that the nine categories of information it seeks from Bork and Reed Smith are relevant and not privileged and their countering contention that Avery has misrepresented Judge Nugent order.

With that out of the way, I can turn to the contention that because Avery did not make a sufficient showing of need, I erred in order-

---

**2.** In *Vaughn v. Rosen,* 484 F.2d 820, 826 (1973), the court required parties asserting the attorney client privilege in FOIA cases create a system of "itemizing or indexing" documents so that "a party's right to information is not submerged beneath governmental obfuscation and mischaracterization, and (2) ... the court system [is permitted] effectively and efficiently to evaluate the factual nature of disputed information."

ing an *in camera* submission of the documents at issue.

The contention that there must be such a showing finds no support whatsoever in the text of any pertinent Federal Rule of Civil Procedure. Rule 45, in the disjunctive, authorizes a court to quash a *subpoena* if it requires the disclosure of privileged material or subjects the person who receives the *subpoena* to an undue burden. There is therefore nothing in that rule which would condition enforcement of a *subpoena* upon a showing that the person who served the *subpoena* needs the documents *subpoenaed* before a court can resolve the privilege question by an *in camera* submission. While another section of Rule 45 speaks of obligation to ascertain whether the *subpoena* subjects "a person to undue burden" and the need of the person seeking the documents might well be an important element in the calculus of ascertaining that the burden the *subpoena* imposes is undue, that subsection cannot possibly be interpreted to require a showing of need before the court may exercise its discretion to resolve a privilege question by reviewing the documents themselves.

Additionally, if, as seems to be the case, Rule 45 is to be read *in pari materia* with the discovery standard in Rule 26(b)(5), then a party seeking enforcement of the *subpoena* need only show that the information sought is "reasonably calculated to lead to the discovery of admissible evidence" Fed.R.Civ.P. 26(b)(5).[3] He is not obliged to show "need" in addition thereto unless, as I have just indicated, enforcement of the *subpoena* is claimed to impose an undue burden and, at that point, his need may have to be weighed against the burden the *subpoena* creates. Wright & Miller § 2459 at 46. Yet, as Bork and Reed Smith would have it, whenever a privilege claim is asserted against enforcement of a *subpoena*, the party seeking enforcement must prove need before the court is even permitted to demand that the documents be produced for *in camera* inspection. To insist upon such a requirement whenever

a privilege is claimed writes into Rule 45 an obligation it does not contain.

This additional obligation finds no support whatsoever in the cases in which Bork and Reed Smith purport to find it. In *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) the issue as defined by the Supreme Court was:

The specific question presented is whether the applicability of the crime-fraud exception must be established by "independent evidence" (i.e., without reference to the content of the contested communications themselves), or, alternatively, whether the applicability of the exception can be resolved by an in camera inspection of the allegedly privileged material.

491 U.S. at 556, 109 S.Ct. 2619.

The Supreme Court then specifically held that an *in camera* exception of the allegedly privileged communications to determine whether those communications fall within the crime-fraud exception to the attorney client privilege did not violate the privilege and was appropriate. Lest such an examination be based on nothing more than the desire of the government that it be conducted, the Supreme Court required that it show a factual basis to support a reasonable belief that *in camera* review of the materials might reveal evidence to establish that the crime-fraud exception applies. *Id.* at 571, 109 S.Ct. 2619.

This case, unlike that one, has nothing to do with the crime fraud exception. More to the point, it is irrational to leap from the proposition that a party can only compel an *in camera* examination upon a showing that an exception to the attorney client privilege may exist to the proposition that a party claiming a privilege can preclude *in camera* examination by insisting the privilege does exist and its opponent has, in any event, no need for the documents. The converse would seem to be true. If *in camera* examination is appropriate upon reason to believe that the attorney client privilege does not exist it has to be equally appropriate when a party claims that there is reason to believe it exists.

---

**3.** 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 2459 (1995)

(hereafter "Wright & Miller").

The decision in *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) is even less pertinent. It involved judicial review of military secrets and the separation of powers issues that arise when the needs of a litigant clash with national security interests. Those concerns have nothing to do with the attorney client privilege in a dispute between companies that make mailing labels.

*Halkin v. Helms,* 598 F.2d 1 (D.C.Cir. 1978) and *Allen v. Central Intelligence Agency,* 636 F.2d 1287 (D.C.Cir.1980) are Freedom of Information Act ("FOIA") cases where too much judicial readiness to engage in *in camera* review of withheld documents would provide the government with a disincentive to provide a useful *Vaughn*[4] index. More to the point, the *Allen* case is an exhaustive analysis of the legislative history of FOIA and of the pertinent case to support the conclusion that *in camera* examination of documents withheld by government agencies under a FOIA exemption is perfectly appropriate. Indeed, *Allen* indicates why *in camera* inspection is often the preferred method of resolving FOIA exemption or privilege claims[5] and *Halkin* begins with the proposition that: "It is settled that In camera proceedings are an appropriate means to resolve disputed issues of privilege ... albeit one to be invoked cautiously." 598 F.2d at 5 (citations omitted). The need for caution is that *in camera* inspection may not permit the party opposing the privilege or exemption to provide meaningful criticism and argument before the decision is made. *Id. quoting Vaughn v. Rosen,* 484 F.2d at 820, 825. Bork and Reed Smith, who have the documents, have no concern on that score. Thus, if FOIA exemptions and attorney-client privilege claims should be handled similarly then

the pertinent authority in this Circuit support *in camera* inspection of privilege claims.

Finally, in *Stiftung v. V.E.B. Carl Zeiss,* 40 F.R.D. 318 (1966) Judge Robinson, invoking the teaching of *United States v. Reynolds,* 345 U.S. at 1, 73 S.Ct. 528, declined to engage in an *in camera* examination of documents when the government's showing that the documents were covered by executive privilege was strong was met by no showing whatsoever of need for the document. Judge Robinson, however, stated the following:

> In resolving the issue as to in camera inspection, the teachings of *Reynolds* must not be forgotten. The ultimate question is whether, in the circumstances of the case, the occasion for assertion of the privilege is appropriate. In camera inspection is not an end in itself, but only a method that may in given instances be indispensible to decision of that question. The court may be able to satisfy itself, without conducting an examination, that the privilege is sufficiently well founded, and if it does, divulgence even in camera is both unnecessary and improper. And the extent the court should investigate to satisfy itself in that regard depends on the caliber of the showing of necessity. Already, without actual examination of the documents, the Court has probed every facet of the Government's claim of privilege and has found it to be appropriately invoked, and the claimants' showing of necessity is far too negligible to require or justify more.

40 F.R.D. 318.

As Judge Robinson indicated, *in camera* inspection can be indispensable. Unlike him, I certainly have not been able to probe every facet of the privilege claim without looking at the documents. To the contrary, I have not

---

4. *See Vaughn v. Rosen,* 484 F.2d at 820.

5. Courts have been reluctant, however, to conduct in camera inspection, favoring instead the other options available. Where the examination of the requested documents requires herculean labors because of their volume, the reluctance to conduct such inspection is understandable. But when the requested documents are few in number and of short length, such reluctance frequently exacts a cost from the parties and the courts in time and money. An examination of the documents themselves in those instances will

typically involve far less time than would be expended in presentation and evaluation of further evidence. The other procedures are usually nothing more than surrogates for in camera inspection. And, when utilization of these surrogates has not proven fruitful, the court not infrequently finds it necessary to conduct in camera inspection often by direction of an appellate court after a costly appeal has been pursued by the plaintiff.

636 F.2d at 1298.

been provided with even a privilege log and the claim of attorney-client and work products privileges are remarkably broad. According to Reed Smith, for example, any communication between an attorney and client is privileged.[6] Unlike Judge Robinson I cannot possibly fulfill my judicial responsibilities without seeing the documents. Indeed, as Bork and Reed Smith ignore, in that case Judge Robinson did an *in camera* inspection of the documents claimed to be protected by the attorney-client privilege because he concluded that the claims of attorney-client and work product privileges "could not be resolved without consideration of the specific documents toward which they might be directed." *Id.* at 330 n. 50.

In relying on these cases for the proposition that Avery is not entitled to have an *in camera* inspection of the documents at issue, Bork and Reed Smith lose sight of the forest for the trees. The cases expressly authorize *in camera* inspection but either permit or reject it based on the facts of those cases. In that context, need is irrelevant to FOIA cases and may bear in the calculus when, in traditional discovery, a party seeks information protected by executive privilege or constituting military secrets. There is therefore no warrant in those cases or in the Federal Rules of Civil Procedure themselves supporting the proposition that, confronted by a claim of attorney-client and work product privilege in a *subpoena* enforcement action, a judge errs by not conditioning *in camera* inspection of the documents said to be privileged upon an additional showing of need by the party seeking enforcement. To the contrary, like any discovery question, the selection of the most efficient and productive method of resolving a discovery dispute resides in a judge's discretion. I do not believe that it can be said that I abused mine when, confronted with a broad claim of privilege as to a small group of documents, I choose to examine them *in camera.* I therefore will deny the motion for reconsideration and order once again production of the documents as to which a privilege is claimed. Once I

finish that review I will resolve, if necessary, any remaining issues.

---

**6.** *Reed Smith Shaw & McClay's Objections and Motion for Reconsideration of this Court's June*   *29, 1999 Orders* at 7.