Tony **MORGAN**, Plaintiff,

v.

**FEDERAL HOME LOAN MORTGAGE CORPORATION, Leland Brendsel, John Gibbons And Mitchell Delk, Defendants.**

No. CIV. A. 98CV01397 (ESH/JMF).

United States District Court,
District of Columbia.

Oct. 19, 2000.

Errata October 26, 2000.

Lynne Bernabei, Debra Susan Katz, Alan Robert Kabat, Lisa J. Banks, Bernabei & Katz, Washington, DC, James M. Finberg, Kelly M. Dermody, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, David S. Stellings, Joan T. Brown, Hector D. Geribon, Jonathan D. Selbin, Lieff, Cabraser Heimann & Bernstein, New York City, for plaintiff.

Robert John Smith, Nancy Rich Kuhn, Bart C. Barre, Morgan, Lewis & Bockius, L.L.P., Washington, DC, Diane M. Ennist, Federal Home Loan Mortgage Corporation, McLean, VA, for defendant.

John Jude Hathway, Whiteford, Taylor & Preston, LLP, Washington, DC, Brian J. McCabe, Whiteford, Taylor & Preston, L.L.P., Washington, DC, for William M. Mercer.

Matthew Anthony Rizzo, Odin, Feldman & Pittleman, P.C., Fairfax, VA, for Strategic Interactions, Inc.

John J. Michels, McGuire, Woods, Battle & Booth, L.L.P., McLean, VA, for Manchester Partners, International.

Barbara DeShona Brice-Brown, U.S. Equal Employment Opportunity Commission, Washington, DC, for Equal Employment Opportunity Commission.

## MEMORANDUM ORDER

FACCIOLA, United States Magistrate Judge.

### Introduction

The presiding judge, Judge Huvelle, has taken great pains to limit the claims in this case and the resulting discovery to whether or not the Federal Home Loan Mortgage Corporation ("Freddie Mac") engaged in retaliatory conduct or racial discrimination when it did not hire the plaintiff, Tony Morgan, for nine positions for which Morgan applied after Freddie Mac terminated Morgan's position with Freddie Mac in March, 1996.

### The Strategic Interactions Subpoena

On May 15, 2000 plaintiff served a subpoena duces tecum on Strategic Interactions, Inc. which required it to produce:

1. All documents pertaining to Freddie Mac from 1994 to the present, including but not limited to, the employment and diversity consulting services that Strategic Interactions provided to Freddie Mac from 1994 to the present.

2. All documents relating to the "Diversity: Inner and Outer Management" presentation that Strategic Interactions and its staff prepared from 1994 to the present.

3. All communications between Strategic Interactions and Freddie Mac regarding the services it rendered.

4. All documents provided to Strategic Interactions by Freddie Mac.

5. All documents memorializing interviews with Freddie Mac employees, statements provided by or prepared for Freddie Mac employees, surveys and/or questionnaires taken at or for Freddie Mac.

6. All contracts between Strategic Interactions and Freddie Mac, and all bills for services to Freddie Mac.

7. All documents referencing the termination of Strategic Interactions' services by Freddie Mac and/or the reasons for any such termination.

### The USATREX Subpoena

On the same day, plaintiff served a subpoena duces tecum on USATREX which required it to produce:

1. All documents pertaining to Freddie Mac from 1994 to the present, including but not limited to, the investigation and consulting services that Strategic Interactions provided to Freddie Mac from 1994 to the present.

2. All documents pertaining to the investigations, in or around 1997, that USATREX conducted into racist "ebonics" e-mail messages and all other racist incidents (including racist graffiti) at Freddie Mac, that USATREX and its staff conducted from 1996 to the present.

3. All communications between USATREX and Freddie Mac regarding the services it rendered.

4. All documents provided to Strategic Interactions by Freddie Mac.

5. All documents memorializing interviews with Freddie Mac employees, statements provided by or prepared for Freddie Mac employees, surveys and/or questionnaires taken at or for Freddie Mac.

6. All contracts between USATREX and Freddie Mac, and all bills for services to Freddie Mac.

7. All documents referencing the termination of USATREX's services by Freddie Mac and/or the reasons for any such termination.

### The Manchester Partners International Subpoena

Finally, on May 15, 2000 plaintiff served a subpoena duces tecum upon Manchester Partners International which required it to produce:

1. All documents pertaining to Tony Morgan, including but not limited to the outplacement and recruitment services that Manchester provided from 1996 to the present.

2. All job applications, advertisements, or notices, resumes and related materials that Manchester received from Tony Morgan, or prepared for Tony Morgan, and all related materials pertaining to job searches by Tony Morgan.

3. All communications between Manchester and Freddie Mac, including but not limited to, Candice Mendenhall, regarding Mr. Morgan's job searches and/or status reports about Mr. Morgan.

4. All contracts between Manchester and Freddie Mac, and all bills for services to Freddie Mac.

5. All documents pertaining to outplacement and recruitment services that Manchester has provided for other current or former employees of Freddie Mac, from 1995 to the present.

### The Services Provided by Manchester

Pursuant to a contract, executed in 1996, Manchester provides outplacement services to displaced Freddie Mac employees, including counseling, determining their career desires, supporting them in locating alternate employment and providing them with education or training to find new jobs. *Affidavit of Mark Ostrowski, Senior Vice President, Manchester, Inc. Exhibit 1 to Plaintiff's Mo-*

*tion for Protective Order and Opposition to Plaintiff's Motion to Compel* at 1 and Exhibit C thereto, the contract. Manchester has since provided to plaintiff all records pertaining to the outplacement services rendered to plaintiff, the contract for the services provided Freddie Mac by Manchester and what it calls "all correspondence between Freddie Mac and Manchester within these regards (with the exception of privileged correspondence between attorneys)" *Id.* ¶ 4. It objects to producing the materials sought by paragraphs 4 and 5, i.e., other contracts and bills for services and, much more significantly, the documents relating to outplacement and recruitment services that Manchester provided other employees of Freddie Mac before and after plaintiff's discharge.

### The Services Provided by Strategic Interactions

According to the declaration of its Chief Operating Officer, Jennell Evans, Strategic Interactions uses "interactive methods to improve organizational performance." Declaration of Jennell Evans, *Exhibit 1 to Strategic Interactions Inc's Memorandum in Opposition to Plaintiff's Motion to Compel Production of Third Party Documents at 1.* According to Mr. Evans his company began in 1993 to provide training sessions for Freddie Mac employees on "team building, diversity, conflict management, and sexual harassment." *Id.* Evans also explains that his company "does not conduct or prepare analyses of past diversity performance, nor compile such information into reports. It did not prepare such reports for Freddie Mac." *Id.* at 2.

### The Services Provided by USATREX

Thomas J. Barrett is the Director of Technical/Investigate Operations at USATREX International Inc., a security and investigative firm with headquarters in Vienna. According to his affidavit, the General Counsel of Freddie Mac retained USATREX to investigate the origin of graffiti found in Freddie Mac's headquarters in McLean, Virginia and the origin of a racially offensive e-mail at the company. Affidavit of Thomas J. Barrett ¶ 2. In the investigation USATREX "interviewed employees, contractor and vendors who might have knowledge relevant to the investigation, monitored the work environment, utilized diagnostic software, reviewed electronic records and archives, searched the Internet, and examined physical evidence." Mr. Barrett also indicates that USATREX's investigation did not concern Tony Morgan; it did not evaluate any hiring decisions by Freddie Mac; nor did USATREX investigate any allegation of retaliation by any employee. *Id.* ¶ 3.

### Plaintiff's Justifications for the Subpoenas

As to Manchester, plaintiff, citing his burden of proof as to liability and punitive damages and his right to rebut any justification Freddie Mac tenders for not hiring him, argues that:

> Since plaintiff has alleged discrimination and retaliation, information about Manchester's services is essential to determining whether Freddie Mac provided race-neutral outplacement services to its terminated employees, or whether Freddie Mac used Manchester as a conduit to obtain confidential information about former employees who had alleged racial discrimination, harassment or retaliation, as had plaintiff.

*Plaintiff's Opposition to Defendant's Cross–Motion to Quash Third Party Subpoenas* at 13.

As to Strategic Services, plaintiff claims that information about Strategic Services is essential "to determining whether Freddie Mac provided the requisite diversity training to the individual defendants and to the decision-makers for the positions that plaintiff applied for or expressed an interest [in]." *Id.* at 13.

Finally, according to plaintiff, information abut USATREX services is "essential to determining whether Freddie Mac conducted a sufficient investigation and resolution of alleged race-based incidents in its workplace, and whether the individual defendants and the decision-makers for the positions that plaintiff applied for or expressed an interest were involved with or implicated by [*sic* ] USATREX's investigations." *Id.* at 14.

### The Strategic Services Subpoena Is Overly Broad

■ The information said to be available from Strategic Services is not reasonably calculated to lead to the discovery of admissible evidence. *See* Fed.R.Civ.P. 26(b)(1). Whether or not the Freddie Mac decision makers had training in team building, conflict management, and sexual harassment has nothing to do with the validity of the decision they made not to hire plaintiff. Training in "team building" and "conflict management" have nothing to do with the making of the fundamental personnel decision whether or not to hire a person and the comparison between his abilities and those of his competitors. Additionally, plaintiff is, of course, not complaining about sexual harassment. Even if one construed the word "diversity" in the description of the training Strategic Services provided to connote training in dealing with a racially diverse workforce, there is nothing in human experience that suggests that persons who do or do not sit through office training programs are thereby more or less likely to discriminate in hiring decisions. Additionally, even if that statement were wrong, and there is some likelihood that racial diversity training makes it likely that people who take it are less likely to discriminate on the basis of race than those who do not, the probative value of proving that a certain person had or did not have training is so negligible that I am hard pressed to believe that Judge Huvelle would ever find that it was worth the time to permit plaintiff to prove it.

To guard against the possibility that I may be wrong in that prediction and in the exercise of my discretion I will nevertheless require Freddie Mac to file a statement by a Freddie Mac employee indicating whether the persons who made the decision not to hire plaintiff took the "diversity" training this company offered and, if they did, which ones took it, when, and the nature of the "diversity" training they received. The declarant shall base her declaration on either her personal information or on Freddie Mac's records.

### The USATREX Subpoena Is Overly Broad

■ The premise of securing information about the USATREX investigation is that, if the investigation of the graffiti and the "ebonics" e-mail indicated the participation of any one who made the hiring decision, her participation may be probative of her discriminatory intent. As I stated in another case:

> Evidence of other "bad acts" is never admissible simply to establish a propensity to engage in similar acts. Fed.R.Evid. 404(b). Provided its relevance outweighs it tendency to prejudice the opponent of the evidence unfairly, evidence of other acts of discrimination or retaliation similar to the discrimination or retaliation charged have been admitted to show, for example, motive or intent. *Miller v. Poretsky*, 595 F.2d 780 (D.C.Cir.1978); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1155 (10th Cir.1990); *Herman v. National Broadcasting Co.*, 744 F.2d 604, 609 (7th Cir.1984); *Jay Edwards Inc. v. New England Toyota Distributor*, 708 F.2d 814, 824 (1st Cir.1983), *cert. denied*, 464 U.S. 894, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983); *Hariston v. WMATA*, 1997 WL 411946 (D.D.C. April 10, 1997); *Cardona v. Skinner*, 729 F.Supp. 193, 199 (D.P.R.1990). *See also Dougherty v. Barry*, 604 F.Supp. 1424, 1439 (D.D.C.1985) (other acts of retaliation probative that a custom or policy of retaliation existed). By the same token, only discrimination or retaliation of the same character and type as that is alleged is probative. To establish that a prior discriminatory act is probative of the intention or motive of the defendant, there must be some reason to believe that his motivation or intention in the acts in question was similar to his motivation or intention on the prior occasion.

*White v. United States Catholic Conference*, 1998 WL 429842 * 5 (D.D.C. May 22, 1998).

Thus, if there were evidence that persons who made the decision not to hire plaintiff were implicated in writing racial graffiti or sending e-mail containing racial jokes, or condoned such practices, then there would be precedential authority for the admissibility of such evidence. By the same token, if there is no such evidence, then proving a racial incident somewhere in a corporation's work

life is hardly probative that the other persons who work for that corporation share the discriminatory attitude of the person whose behavior or statements provoked the incident. Here, as elsewhere in human existence, guilt by association is as unfair as it is illogical. Discovery about such incidents, in the absence of some connection between the perpetrators of the incident and the persons involved in the decision not to hire plaintiff, cannot possibly make more likely the proposition that the persons who did not hire plaintiff did so because of his race.

With that said, I believe that there is a loop that has to be closed. In his affidavit, Mr. Barrett does not specifically indicate whether the investigation of the incidents yielded any information whatsoever that the persons who were involved in the decisions not to hire plaintiff were implicated in the incidents investigated, or condoned such behavior once they became aware of it. Counsel for Freddie Mac shall advise Mr. Barrett of the names of the persons asserted by plaintiff to be involved in the decision not to hire plaintiff and Mr. Barrett will have to file a supplemental affidavit indicating whether the investigation he conducted yielded any information that those persons were implicated in the incidents investigated or condoned them once having been made aware of them.

### The Manchester Subpoena
### Is Overly Broad

█ Finally, as to Manchester, that it provided assertedly confidential information about other former Freddie Mac employees it was counseling in addition to plaintiff proves little. This is not a case in which identity is at issue so that evidence of similar actions in two incidents renders it more likely that the same person did both. That Freddie Mac got information about other employees as it did about plaintiff does not say anything whatsoever about any discriminatory intent its employees had when they declined to hire plaintiff.

As to retaliation, even if there was some probative value to proving that Freddie Mac secured information about other discharged employees because securing that information made retaliating against those who complained more likely to occur, the probative value of that evidence rises from knowing that Freddie Mac secured that information and not from knowing what the information was. The subpoena seeks, however, the information itself and the actual information reported by Manchester as to the other discharged employees is irrelevant to any proof of the intent with which Freddie Mac personnel acted when they declined to hire plaintiff.

To narrow the subpoena to the information that might have some probative value, I will order Freddie Mac's counsel to file a declaration by a Freddie Mac employee indicating whether or not Freddie Mac received information from Manchester as to other displaced or discharged employees which was similar to the information it received as to plaintiff. The declarant shall speak as to Manchester's activities during the life of its contract with Freddie Mac and shall predicate her answer on either her own personal information or on Freddie Mac records.

Except for the information I am ordering Freddie Mac and Mr. Barrett to produce the subpoenas are overly board. It is **THEREFORE ORDERED THAT:**

1. *Plaintiff's Motion to Compel Production of Third Documents From Strategic Interactions, Inc.* [# 126];

2. *Defendant's Cross–Motion to Quash Third Party Subpoenas* [# 130];

3. *Plaintiff's Motion to Compel Production of Third Party Documents from USATREX International, Inc.* [# 125];

4. *Motion for Protective Order* [# 131];

5. *Plaintiff's Motion to Compel Production of Third Party Documents from Manchester, Inc.* [# 137];

are **DENIED** in part and **GRANTED** in part and

**IT IS FURTHER ORDERED THAT:**

1. Freddie Mac will file a declaration from one of its employees indicating whether the persons who made the decision not to hire plaintiff took the "diversity" training Strategic Services, Inc. offered and, if they did, which ones took it, when, and the nature of the training these persons received.

2. Counsel for Freddie Mac shall advise Theodore Barrett of USATREX of the names of the persons asserted by plaintiff to be involved in the decision to hire plaintiff and Mr. Barrett will then file a supplemental affidavit indicating whether the investigation he conducted yielded any information that those persons were implicated in the incidents investigated or condoned them once having been made aware of them.

3. Freddie Mac's counsel shall file a declaration by a Freddie Mac employee indicating whether or not Freddie Mac received information from Manchester as to other displaced or discharged employees which was similar to the information it received as to plaintiff. The declarant shall speak as to Manchester's activities during the life of its contract with Freddie Mac and shall predicate her answer on either her own personal information or on Freddie Mac records.

**SO ORDERED.**

### TECHNICAL ERRATA

On October 19, 2000, I issued a Memorandum Order in this case. It appearing that there were several typos in the captions of the motions ruled upon, it is therefore, hereby,

**ORDERED** that *Plaintiff's Motion to Compel Production of Third Party Documents from USATREX International, Inc.* [# 125] is **DENIED** in part and **GRANTED** in part as stated in the original Order. It is further, hereby,

**ORDERED** that *Plaintiff's Motion to Compel Production of Third Party Documents From Strategic Interactions, Inc.*[# 126] is **DENIED** in part and **GRANTED** in part as stated in the original Order. It is further, hereby,

**ORDERED** that *Plaintiff's Motion to Compel Production of Third Party Documents from Manchester, Inc.* [# 127] is **DENIED** in part and **GRANTED** in part as stated in the original Order, but the docket number corresponding to this motion is **AMENDED** to read [# 127] rather than [# 137]. It is further, hereby,

**ORDERED** that *Defendant's Cross–Motion to Quash Third Party Subpoenas* [# 130] is **DENIED** in part and **GRANTED** in part as stated in the original Order. Finally, it is, hereby,

**ORDERED** that the reference to the *"Motion for Protective Order* [# 131]*"* is **DELETED** as it is nonexistent.

**SO ORDERED.**