Elayne R. MITCHELL, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, et al., Defendants.

No. CA 01–1866(RWR/JMF)ECF.

United States District Court, District of Columbia.

July 15, 2002.

**456**

Martha Walfoort, James & Hoffman, Washington, DC, for plaintiff.

Mark S. Landman, Landman Corsi Ballaine & Ford P.C., New York City, for defendants.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

Plaintiff alleges that defendants discriminated against her on the basis of her race (African American), gender (female), age (then 67), and perceived physical disability (degenerative arthritis). Specifically, plaintiff claims that after working for four years as a Human Resources Consultant in Amtrak's[1] Office of Workplace Development, Human Resources Department, the company then rejected her application for the position of Manager of Employee Services and later terminated her. Currently pending and ready for resolution are three discovery motions: 1) *Plaintiff's Motion to Compel Defen-*

---

1. "Amtrak" is, of course, the more common name for the defendant, the National Railroad Passenger Corporation.

*dants' Discovery Responses,* 2) plaintiff's *Motion to Quash or, in the Alternative, for a Protective Order,* and 3) *Plaintiff's Motion to Allow Additional Depositions.*

## INTRODUCTION

Plaintiff's three motions raise eight topics for discussion: [2]

1. The duties of Paul Bello, an employee who survived the restructuring that resulted in plaintiff's termination.

2. The consequences, if any, resulting from previous Amtrak restructurings, to Amtrak employees who are members of protected classes.

3. Amtrak's hiring and firing of other members of protected classes during plaintiff's employment.

4. All other complaints of discrimination, if any, against Amtrak during the period of plaintiff's employment.

5. The availability of information regarding a prior class action, in which plaintiff was a class member, filed in this court.

6. Whether certain materials produced by a consultant from Amtrak are protected by the attorney-client or work product privileges.

7. Whether the discovery cutoff date bars any additional discovery.

8. Whether plaintiff should be permitted to take two additional depositions.

## ANALYSIS

I. *Plaintiff's Motion to Compel Defendants' Discovery Responses*

A. *The Duties of Paul Bello and Previous "Restructurings"*

In 1997, Congress ordered that Amtrak, then in financial crisis,[3] reduce management costs and increase employee productivity. The Amtrak Reform and Accountability Act of 1997, Pub.L. No. 105–134, 111 Stat. 2571 (1997). Amtrak's defense in this case is based on the mandates of this Act:

At the end of 1999, in an effort to comply with this mandate and to increase responsiveness to management development and create consistency in all training programs, defendants decided to outsource the supervisory and leadership programs offered by the Workforce Development Office. Because plaintiff's main focus was the delivery of these programs, defendants' decision resulted in the elimination of her position. Plaintiff was terminated on January 7, 2000: Amtrak used the resources provided by the American Management to satisfy its supervisory/leadership development needs.

*Defendants' Opposition to Plaintiff's Motion to Compel* ("Defs. Opp." at 3).

Plaintiff claims that information about how other employees, not of plaintiff's race, sex, age, and disability, were treated during previous restructuring efforts by Amtrak between 1996 and 1999 is relevant to her claim of discrimination. Hence, in interrogatories 6 and 7, she seeks a description of any restructuring of Amtrak's Human Resources department "between 1996 and the present" as well as the identification of any employee affected by any prior restructuring, including his or her name, position, race, gender, age, disability, and the way in which he or she was affected by the restructuring.

Defendants provided information as to a 1998 "comprehensive review of all corporate services" that led to the elimination of the positions of three named persons who functioned as "HR consultants" and the reassignment of four other named "HR consultants." Defendants then described the 1999 PricewaterhouseCoopers organizational assessment of the Human Resources Department that led to the decision to outsource the "supervisory/leadership programs" and the resulting termination of plaintiff. *Defendant's Supplemental Responses to Plaintiff's*

**2.** Defendants provided additional discovery during the period in between the filing of *Plaintiff's Motion to Compel Defendants' Discovery Responses* and *Plaintiff's Reply in Support of her Motion to Compel Discovery Responses* ("Plains.Reply"). Therefore, the only issues as to the *Motion to Compel* that remain are those identified by plaintiff in her reply.

**3.** A wag would note that this is becoming an annual crisis.

*First Set of Interrogatories* at 4–5. Defendants refused, however, to provide any information about any employees affected by the earlier restructuring, stating that the requests were overly broad and unduly burdensome.[4] The defendants also claimed that disclosing such information would violate the privacy rights of Amtrak employees. Defendants also resist providing any information about the current duties of Paul Bello, an individual who was retained by the Human Resources Division after the 1999 restructuring.

### 1. Bello's Duties

■ As to Bello's present duties, if plaintiff can establish, for example, that duties previously performed by plaintiff were reassigned to Bello, who remained in the department after the restructuring, and not outsourced to the American Management Association, she would have powerful evidence of the falsity of defendants' stated explanation. Thus, the fact finder would be able to infer that Amtrak's stated explanation was pretextual and that the real reason for plaintiff's termination was discriminatory. *Aka v. Washington Hosp. Ctr.* 156 F.3d 1284, 1293 (D.C.Cir.1998)(en banc)("If the jury can infer that the employer's explanation is not only a mistaken one in terms of the facts, but a lie, that should provide even stronger evidence of discrimination."). The information concerning Bello's present duties is therefore relevant to the defense asserted.

### 2. Previous Restructurings

■ A similar logic compels the conclusion that plaintiff is entitled to information as to whether prior restructurings of the Human Resource Department during the period of plaintiff's employment led to the termination of people, like her, who can claim membership in a protected class. If she can show that each time the Human Resources Department was restructured, members of a protected class suffered termination, transfer, or other loss of employment opportunities, she may be able to convince the finder of fact that such a disproportionate impact on members of a protected group could not be the product of coincidence but was instead the product of discriminatory animus.

Furthermore, the information sought is limited to the Department in which plaintiff worked and the period of time she worked there and is sufficiently constrained to meet the standard of "likely to lead to admissible evidence" under Fed.R.Civ.P. 26(b)(3). I will, therefore, require Amtrak to specify any restructuring or reorganization of the Human Resources Department in the period January 1, 1996 to the present and to identify any employee, if there was any, who was fired, demoted, or transferred as a result of the restructuring or reorganization. If there was any such employee, Amtrak shall specify his or her age, gender, race, and whether that person is disabled or perceived as disabled.

### B. Hiring and Termination Data

■ Initially, plaintiff sought the name, job, race, gender, age, and disability of all employees hired or terminated by Amtrak since 1996. She has since narrowed this request to employees hired or terminated in the Human Resources Department, where she worked. Defendants provided the information as to employees terminated in that department during that period, but balks at providing any information regarding hiring because plaintiff is complaining about being terminated and not about not being hired.

As I have often noted in previous decisions, I am loathe to create automatic limits on a party's right to seek discovery in Title

---

**4.** In response to defendants' claim that the request is overly burdensome, I note my earlier responses to such an unsubstantiated claim:

First, following many other courts, I have held that I will not consider "boilerplate" objections like this. Instead, the party opposing discovery must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome. *Pro–Football, Inc. v. Harjo,* 191 F.Supp.2d 77, 80 (D.D.C.2002); *Natural Resources Defense Council v. Curtis,* 189 F.R.D. 4, 13 (D.D.C.1999); *Athridge v. Aetna Cas. & Sur. Co.,* 184 F.R.D. 181, 191 (D.D.C.1998). The defendant's objection is therefore insufficient on its face.
*Pleasants v. Allbaugh,* 208 F.R.D. 7, 11 (D.D.C. 2002).

VII cases. *See, e.g., Pleasants v. Allbaugh,* 208 F.R.D. 7, 9–10 (D.D.C.2002). Generally, parties are permitted to seek discovery if the information "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). As Title VII cases are particularly hard to prove in the absence of a proverbial smoking gun, such as a discriminatory comment made by a hiring official, discovery in these cases is necessarily broad. Limits on discovery as to scope, time, and geography must be carefully constructed and premised on the notion that plaintiffs have a right to seek discovery on similarly motivated discriminatory acts if it is likely that a finder of fact would conclude that those other acts are probative of the intention or motivation of which the plaintiff has complained. *Johnson v. The Washington Times Corporation,* 208 F.R.D. 16, 19–20 (D.D.C.2002); *See also White v. United States Catholic Conference,* No. CIV.A.97–1253, 1998 WL 429842, at *5 (D.D.C. May 22, 1998)("[E]vidence of other acts of discrimination or retaliation charged have been admitted to show, for example, motive or intent."). If it is determined by the finder of fact that an individual once acted in a discriminatory fashion, the finder of fact may infer that the individual acted in the same fashion, with the same motive, when presented with a similar situation. *Johnson v. The Washington Times Corp.,* 208 F.R.D. at 19–20 (*citing Miller v. Poretsky,* 595 F.2d 780, 788 (D.C.Cir.1978)); *Morgan v. Fed. Home Loan Mortgage Corp.,* 197 F.R.D. 12, 16 (D.D.C. 2000).

While a similarly precise, evidentiary rationale was not provided, the court of appeals has stated quite broadly that data bearing on an employer's treatment of other members of a protected class is discoverable in individual Title VII cases.[5]

In this case, whether I approach the question broadly based on the *MEAN* case's endorsement of the discoverability of comparative or statistical data in individual Title VII cases, or more narrowly based on the probative value of learning the motives with which Amtrak's personnel managers have acted, I must conclude that defendants' restricting of responses to terminating decisions is illogical. First, I cannot believe that anyone, let alone a statistician worthy of the name, charged with the obligation to analyze whether a company's employment practices were or were not discriminatory, would analyze termination data but ignore hiring data. Second, as to motive, surely human experience teaches that a person who is improperly motivated in her decisions to fire people is equally likely to be improperly motivated in her decisions to hire people. Since I must reach those conclusions, I therefore must reject defendants' proposed restriction because it contradicts that obvious logic.

## C. *Other Complaints of Discrimination*

Plaintiff seeks information about other claims of discrimination made against Amtrak on the basis of race, gender, age, and disability. Although plaintiff has narrowed this request to focus solely on the Human Resources Department, defendants still ar-

---

**5.** It is well established that statistical data and comparative information concerning an employer's treatment of minorities is relevant evidence in an individual discrimination claim against that employer. Such evidence can be used by a plaintiff to make out a prima facie case of discrimination or to show that the employer's stated reasons for the challenged actions are a pretext for discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973) (statistical evidence concerning an employer's "general policy and practice with respect to minority employment" can be used to prove pretext) (footnote omitted). This court has held that "statistical evidence may establish a prima facie case of employment discrimination in an individual case" even though such data is generally used in

class action cases to show a pattern or practice of discrimination. *Davis v. Califano,* 613 F.2d 957, 962 (D.C.Cir.1979). Numerous other cases have held that statistical and comparative information are relevant in proving an individual claim of discrimination. *See, e.g., Lynn v. Regents of the University of California,* 656 F.2d 1337, 1342–43 (9th Cir.1981), cert. denied, 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982); *Kinsey v. First Regional Securities, Inc.,* 557 F.2d 830, 839 (D.C.Cir.1977); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 344–45 (10th Cir.1975). Statistical and other comparative information is clearly "relevant to the claim" of an individual plaintiff in a Title VII case.

*Minority Employees at NASA (MEAN) v. Beggs,* 723 F.2d 958, 961 (D.C.Cir.1983).

gue that this request is too broad and not relevant to plaintiff's claim of individual discrimination. Nevertheless, defendants have provided documents regarding a claim filed by one person in 2000. Defendants also indicated that no other claims were filed within the Human Resources Department in 1999 and 2000. All, therefore, that plaintiff still seeks is information pertaining to claims filed within the Human Resources Department from 1996 to 1998.

In a series of decisions, I concluded that other claims of discrimination against a defendant are discoverable if limited to the same form of discrimination claimed by plaintiff, if limited to the same department or agency where plaintiff worked, and if limited to a reasonable time before and after the discrimination complained of. *Pleasants,* 208 F.R.D. at 12–13; *Childers v. Slater,* 1998 WL 429849, at *3–4 (D.D.C. May 15, 1998); *White v. United States Catholic Conference,* 1998 WL 429842, at * 5 (D.D.C. May 22, 1998). In this case, plaintiff's request for evidence of other claims of discrimination within the Human Resources Department between 1996 and 1998 is reasonably related to the duration of her employment and close enough in time to permit the conclusion that persons accused of discrimination in those other complaints might have still been in positions of authority when she was terminated. As I explained above and in my previous opinions, the legitimate theory underlying such discovery is that it might lead to evidence that persons accused of discrimination may have acted with a similar discriminatory animus on a prior occasion. While a complaint in itself proves nothing about the accusation made, knowledge of its existence might yield admissible evidence as to the discriminatory animus on a prior occasion of a particular manager and that likelihood suffices under Fed.R.Civ.P. 26(b)(1). Thus, defendants will be ordered to produce, subject to the protective order, any complaints of discrimination by persons employed in the Human Resources Department during the period of 1996 to 1998 if the complainant

claimed discrimination on the same basis or bases as the plaintiff in this case.

### D. *Materials Protected by Consent Order*

Plaintiff's Document Request No. 3 sought:

> All pleadings, documents produced in discovery, and expert reports related to the lawsuit and consent decree in *Leon McLaurin v. Amtrak,* Civil Action No. 1:98:CV2019 (EGS).

The *McLaurin* case was a class action filed by African American Amtrak employees who alleged racial discrimination.[6] Plaintiff is a member of that class and defendants protested that plaintiff and her counsel were well aware that the Consent Decree that resolved the *McLaurin* case prohibits either Amtrak or class counsel from disclosing certain information. Defendants insist that the consent decree requires class counsel to follow informal mediation procedures if asserting a failure by Amtrak to comply with its obligations under the consent decree. Defs. Opp. at 12.

Plaintiff replies that class counsel has been inaccessible and that "[d]efendants have stated no good reason for withholding that information." Plains. Reply at 6.

Actually, there is a perfectly good reason for defendant's refusal; a court order prohibits, at least in part, the disclosure sought. Paragraph XI of the Consent Decree provides:

> Class counsel acknowledge that during the course of this litigation they have received and may hereafter receive under this Decree in connection with the monitoring, confidential information regarding Amtrak and its personnel, including without limitation, personnel files, internal memoranda, personnel plans, programs, policies and procedures, computerized data and other information. Amtrak's counsel acknowledges that they have received confidential information regarding the named plaintiffs. The parties, their retained experts, their consultants and their attorneys shall continue to be bound by the terms of the Stipulated Protective Order filed Decem-

---

**6.** Defendants opposed plaintiff's motion to designate the *McLaurin* class action as a related case.

Judge Roberts has yet to rule on this issue.

ber 28, 1998, through the term of this Decree and thereafter.

The Protective Order prohibits the parties and their counsel from disclosing certain information, other than for the purposes specified. Disclosure to this plaintiff is certainly not one of those purposes. Thus, on its face, the Consent Order prohibits Amtrak from disclosing the "documents produced in discovery" insofar as those documents contain or reflect "confidential information regarding Amtrak and its personnel, including without limitation, personnel files, internal memoranda, personnel plans, programs, policies and procedures, computerized data and other information." Plaintiff suggests no basis for me to authorize Amtrak to violate another judge's order. The converse is also true; comity, let alone, simple courtesy, requires that one judge do nothing that purports to authorize a person to violate another judge's order.

The situation as to the other documents is less clear. "Expert reports," commonly offered into evidence, may or may not contain the confidential information defined by the Consent Decree. Any doubt has to be resolved in favor of avoiding any violation of the Consent Decree and I will not order their production without a certain showing that nothing in them falls within the Consent Decree's prohibition against disclosure.

■ Finally, while it is hard to imagine how "pleadings" could ever be confidential, I am struck by the fact that they, and any expert reports, should already be in the possession of plaintiff's counsel. Plaintiff's counsel, I have to suppose, has already been compensated for his or her services and therefore already possesses the ability to produce the documents at issue. Failing cooperation, plaintiff has subpoena power. I am, therefore, hard pressed to understand why Amtrak has to provide plaintiff with what is already in the possession of her own counsel. Furthermore, pleadings in this court's Clerk's Office are as available to plaintiff in this case as to anyone else. I see no reason to order the disclosure from Amtrak of pleadings she can get from the Clerk's Office or her own counsel.

**E. Severance Agreements.**

■ Plaintiff seeks information concerning severance agreements made by Amtrak with other employees upon the theory that the terms of her severance agreement are not characteristic of other severance agreements and that therefore, a finder of fact may draw an inference of discrimination from her unique treatment. Defendants counter that they cannot release other employees' severance agreements because they are confidential documents. As with the claims of discrimination, however, it would not be unreasonable nor overly burdensome for Amtrak to turn over those severance agreements entered into by Human Resources Department employees during a certain period of time [7] to permit plaintiff to substantiate her claim that her severance agreement was unique. Release of the agreements will be subject to the protective order currently in place.

**F. 1999 Job Performance Evaluations**

Plaintiff seeks Human Resources Department employee evaluations that were conducted in 1999 by an outside contractor. Defendants argue that this information is protected from disclosure by the work product and attorney-client privilege. While Fed.R.Civ.P. 26(b)(5) requires what lawyers call a "privilege log," I have held that such logs are nearly always useless. Instead, defendants will now be required to submit all documents as to which a privilege is claimed, to chambers for an *in camera* review. Defendants will accompany that submission with a memorandum of law articulating why they believe any privilege applies. I expect that submission to be consistent with my decisions in this area of the law. See e.g., *Avery Dennison Corp. v. Four Pillars,* 190 F.R.D. 1 (D.D.C.1999); *Eugene Burger Management Corp. v. HUD,* 192 F.R.D. 1 (D.D.C.1999); *United States v. Motorola, Inc.,* 1999 WL 552553 (D.D.C. May 23, 1999); *Athridge v. Aetna Casualty & Surety Co.,*

---

**7.** Plaintiff seeks severance agreements for any employee who left Amtrak during the tenure of Defendant Lorraine A. Green as Vice President of Human Resources. *Document Request No. 17.*

184 F.R.D. 200 (D.D.C.1998); *Overseas Private Investment Corp. v. Mandelbaum,* 1998 WL 647208 (D.D.C. Aug.19, 1998); *Boca Investerings Partnership v. United States,* 1998 WL 426567 (D.D.C. Jan.20, 1998); *Evans v. Atwood,* 177 F.R.D. 1 (D.D.C.1997).

II. *Defendant's Motion to Quash or, in the Alternative, for Protective Order*

The basis of defendant's motion is that discovery in this case ended on April 22, 2002, and that the additional discovery sought by plaintiff is outside that discovery cutoff date. Since the filing of defendant's motion, Judge Roberts extended the discovery cutoff date to May 22, 2002. Defendant's motion is, therefore, moot.

III. *Plaintiff's Motion to Allow Additional Depositions*

■ Plaintiff moves to allow for the taking of two additional depositions: Rose Bacchus and Gerri Hall. Plaintiff argues that it was only at the end of discovery that she learned of the importance of these additional witnesses. Plaintiff further contends that allowing her to take a total of seven depositions is neither excessive, nor overly burdensome, under Fed.R.Civ.P. 30(a)(2)(A). Defendants argue that plaintiff has not made out a sufficient showing of good cause to augment the number of permitted depositions and that plaintiff should have known at an earlier date of the importance of the testimony of these two witnesses.

Rose Bacchus, a former Amtrak employee, interviewed plaintiff for the position of Manager of Employee Services and later recommended that she not be hired. Gerri Hall, a current Amtrak employee, was Assistant Vice President of Human Resources in 1999 when the restructuring effort took place. Plaintiff concedes that although she was aware of these two individuals earlier in the litigation, since she was limited to five depositions, she chose to depose their supervisors instead. After determining that Michael Ramirez (Bacchus' supervisor) and Lorraine Green (Hall's supervisor) had little knowledge of the events in question, plaintiff moved to allow for the two additional depositions.

Although discovery in this matter ended on May 22, 2002, the dispositive motions deadline has been suspended and there are no trial dates currently in place. Therefore, I cannot see how it would be overly burdensome for the defendant to produce the two witnesses plaintiff seeks. I will therefore permit the two depositions.

An Order accompanies this Memorandum Opinion.

### ORDER

In accordance with the accompanying Memorandum Opinion, and subject to any applicable provision of the Protective Order entered herein, the following is hereby, **ORDERED:**

1. Defendants will supplement their discovery responses by specifying with particularity the duties Paul Bello has performed since the restructuring that led to plaintiff's termination.

2. Defendants will identify and describe any restructuring of the Human Resources Department in the period from January 1, 1996 to the date of plaintiff's termination. If, as a result of this restructuring or reorganization, any employee of the Human Resources Department was fired, demoted, or transferred, defendants shall identify that person, describe how he or she was affected by the restructuring or reorganization, and specify his or her age, gender, and race, and state whether that person is disabled or perceived to be disabled.

3. Defendants will supplement its discovery responses by identifying by name, job, race, gender and actual or perceived disability, all employees hired by the Human Resources Department in the period from January 1, 1996 to the date of plaintiff's termination.

4. Defendants will provide plaintiff with documents which contain, pertain, or relate to any claim of discrimination made against the Human Resources Department based on race, gender, age, or disability in the period from

January 1, 1996 to the date of plaintiff's termination.

5. Defendants will provide plaintiff with copies of all severance agreements executed between Amtrak and any person employed by the Human Resources Department during the tenure of the defendant Lorraine A. Green as Vice President of Human Resources.

6. Defendants will submit to the court for an *in camera* review all documents as to which defendants claim the attorney-client or work product privileges along with the memorandum described in section VI of the Memorandum Opinion.

7. Defendants will comply with the obligations of this Order within 30 days of its issuance.

It is further, hereby,

**ORDERED** that *Plaintiff's Motion To Compel Defendants' Discovery Responses* [# 23] is **DENIED** in part and **GRANTED** in part. It is further, hereby,

**ORDERED** that defendant's *Motion to Quash Or, In the Alternative, for Protective Order* [# 26] is **DENIED**. Finally, it is, hereby,

**ORDERED** that *Plaintiff's Motion to Allow Additional Depositions* [# 31] is **GRANTED**.

**SO ORDERED.**