**Roy W. KRIEGER, Plaintiff,**

v.

**Kathlynn G. FADELY, et al., Defendant.**

**No. CIVA98–1703 (CKK/JMF).**

United States District Court, District of Columbia.

Feb. 15, 2001.

---

Roy W. Krieger, Paleos & Krieger, P.C., Alexandria, VA, Roy Walter Krieger, Paleos & Krieger, Washington, DC, pro se.

Susan Demske, Anne L. Weismann, U.S. Department of Justice, Civil Division, Washington, DC, for federal defendants.

**MEMORANDUM OPINION AND ORDER**

FACCIOLA, United States Magistrate Judge.

*Introduction*

Plaintiff Roy W. Krieger ("Krieger") believes that his immediate supervisor at the Department of Justice, Kathlynn Fadely ("Fadely"), caused him to be fired by a law firm he had joined after Krieger left the Department of Justice. Krieger and Fadely had been co-counsel, representing the government, in a lengthy trial growing out of the crash of a Delta airline. Krieger resigned from the Department of Justice during the trial to join a law firm. That law firm went bankrupt, Krieger joined a second, left, and joined a third. The third firm fired Krieger, and Krieger believes that Fadely instigated his firing. *See Krieger v. Fadely,* 211 F.3d 134 (D.C.Cir.2000).

Krieger's initial complaint pled various causes of action against Fadely, but Judge Kollar–Kotelly dismissed it. Her decision was affirmed, except as to the one count charging Fadely with a violation of the Privacy Act.

### The Elements of a Privacy Act Claim

In reversing Judge Kollar–Kotelly, the Court of Appeals defined some of the elements of a Privacy Act claim:

Among the elements of a civil action for damages under the Privacy Act are that the agency disclosed "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains...." 5 U.S.C. § 552a(b); *see Pilon v. United States Dep't of Justice*, 73 F.3d 1111 (D.C.Cir.1996); *Tomasello v. Rubin*, 167 F.3d 612 (D.C.Cir.1999). If his lawsuit went forward, there would come a time when Krieger would have to identify the particular records Fadely unlawfully disclosed.

211 F.3d at 136.

Under the Privacy Act:

(4) the term "record" means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph;

5 U.S.C.A. § 552a (1996).

Judge Urbina has explained the nature of a violation of the Privacy Act and the consequential rule of retrieval which applies to such claims:

The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or another agency, except pursuant to a written request by, or with the prior written consent of the individual to whom the record pertains...." 5 U.S.C. § 552a(b) (the Act also contains twelve exceptions to this requirement, none of which appears to be applicable to this case). As a general rule, courts have held that the Privacy Act only covers disclosures of information which was either directly or indirectly retrieved from a system of records. *See Krowitz v. Dep't of Agriculture*, 641 F.Supp. 1536, 1545 (W.D.Mich.1986), *aff'd* 826 F.2d 1063 (6th Cir.1987); *Doyle v. Behan*, 670 F.2d 535, 539 (5th Cir.1982); *Thomas v. United States Dept. of Energy*, 719 F.2d 342, 345 (10th Cir.1983). As the Tenth Circuit held, "[t]he disclosure of information derived solely from independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records." *Thomas*, 719 F.2d at 345. This general rule is commonly known as the "retrieval rule."

*Fisher v. Nat'l Institutes of Health*, 934 F.Supp. 464, 473(D.D.C.1996).

This Circuit refused to invoke the retrieval rule literally when it feared that doing so would eviscerate the Privacy Act. In *Bartel v. FAA*, 725 F.2d 1403 (D.C.Cir.1984), a supervisor named Vincent caused an investigation to be done of whether Bartel had disclosed records protected by the Privacy Act and then reported the results to the persons whose records Bartel had disclosed. *Id.* at 1406. Fearing that a literal application of the retrieval rule would eviscerate the protection Bartel could claim by accepting the strategem of Vincent of avoiding reading the record but nevertheless disclosing the results of the investigation, the court vacated the dismissal of Bartel's complaint. *Id.* at 1410–11. While this Circuit has not further defined the ramifications of its decision in *Bartel* in the traditional application of the retrieval rule, another Circuit has read *Bartel* to mean that a federal official may violate the Privacy Act when he uses the government's sophisticated information collections methods to acquire personal information in a record and then discloses that information in an unauthorized fashion, even though that official may not have physically retrieved the information from the record system. *Wil-*

*born v. Dep't of Health and Human Services,* 49 F.3d 597, 600–01 (9th Cir.1995).

### Plaintiff's Discovery Requests Are Overbroad

█ Under Fed.R.Civ.P. 26(b), as recently amended, a party may only obtain discovery as to a matter that is "relevant to the claim or defense of any party." The substantive nature of the claim asserted defines relevancy, and, as to the Privacy Act, information relevant to Krieger's claim would mean, for example; information disclosing whether (1) Fadely discussed any aspect of Krieger's performance of his responsibilities or his resignation with anyone and whether she made any reference during these discussions to a record (as defined by the Privacy Act) pertaining to Krieger, and whether (2) Fadely authorized or conducted an investigation into Krieger's acts while he was employed by the Department of Justice and then discussed any aspect of that investigation and its conclusion with any other person. As to the latter, Fadely would have to provide the information even though she may not have actually retrieved the information about the investigation which she discussed from a particular file. Discovery would then be relevant only to the claims that Krieger could legitimately assert under the Privacy Act, based on the retrieval rule and the gloss placed on it by the *Bartel* decision.

The discovery Krieger seeks is certainly not so limited. To the contrary, Krieger seeks *all* communications Fadely had with others about Krieger's conduct at the Department of Justice, *all* communications with some 100 persons he identifies, and asks for the name of *every* person with whom Fadely discussed the substance or publication of two articles about the trial. But, unless these communications are based on a record pertaining to Krieger that Fadely saw and disclosed, or the communication fell within the *Bartel* case, they cannot possibly be relevant to Krieger's Privacy Act claim.

█ The arguments advanced by Krieger in support of his motion indicate a fundamental misunderstanding of the Privacy Act. Under that Act, there is a rule of retrieval, not a rule of coincidence. If there is information in a record, and a federal employee gained that same information from the use of her own senses, the employee's telling others what she saw or heard does not violate the Privacy Act merely because there is a record, subject to the Privacy Act, which also contains that information. Fadely learned of Krieger's resignation mid-trial either when Krieger told her or someone else did. That Krieger's letter of resignation, or a memorandum from Fadely to her superiors criticizing Krieger's mid-trial departure, is in Krieger's file and protected by the Privacy Act does not mean that Fadely is thereby prohibited from telling others that Krieger resigned or expressing to others her opinions concerning it. The Privacy Act speaks to the disclosure of records; it does not create a monastic vow of silence which prohibits governmental employees from telling others what they saw and heard merely because what they saw or heard may also be the topic of a record in a protected file.

Krieger's discovery is therefore fatally overbroad. By seeking all communications that Fadely had with anyone, irrespective of the relation, if any, between that communication and a record protected by the Privacy Act, Krieger is seeking information which cannot be relevant to his Privacy Act. He therefore cannot compel his production.

### Adverse Inferences

Krieger's *Motion to Compel* also seeks adverse inferences from the alleged failure of the Department of Justice to produce certain documents. A *Motion to Compel,* however, deals with compelling one's opponent to, for example, produce documents, and the Court cannot compel the Department of Justice to produce what does not exist. Judge Kollar-Kotelly, as trial judge, will resolve upon appropriate application the evidentiary and substantive consequences of the Department of Justice's claimed inability to find certain documents.

### Depositions

█ Plaintiff also seeks to take the depositions of Fadely and her supervisor, Gary Allen. His justification is the same flawed justification for the rest of the discovery. He wants to take these depositions to discover,

**14**

for example, all communications Fadely may have had about him with others. But, he is only entitled to discover communications that violate the Privacy Act, and the depositions he wishes to take in which he will explore all Fadely's communications cannot possibly be relevant to the Privacy Act claim he is asserting. Whether to permit discovery in a Privacy Act case resides in the court's discretion. *J. Roderick MacArthur Foundation v. FBI,* 102 F.3d 600, 605 (D.C.Cir.1996). Discovery in a Privacy Act case is understandably uncommon. A party brings a Privacy Act suit because she has learned of a disclosure which she claims violates the Act; why would one have to discover the factual premise of one's own lawsuit? In analogous FOIA cases, discovery is greatly restricted [1] and should ordinarily occur after the government moves for summary judgment. In such a situation, the plaintiff would invoke Fed. R.Civ.P. 56(f) and claim a need for discovery to challenge the government's exemption claims or the adequacy of the search. *See Miscavige v. IRS,* 2 F.3d 366, 369 (11th Cir.1993). Similarly here, once the government moves for summary judgment, plaintiff may meet that motion by claiming the need for discovery. Until then, however, to take depositions as to all communications Fadely may have had with others, whether or not they involved a violation of the Privacy Act, is to grant Krieger a right he cannot possibly claim.

### Requests for Production

Finally, plaintiff's Requests for Production 15–180 drew the response that the materials sought are "in the public domain." Perhaps that is so, but, in the exercise of my discretion, I will direct the defendant to supplement its responses to these requests by identifying where in the public domain the materials sought appear. References to the Code of Federal Regulations or the Federal Register will suffice. If the materials are in neither, but are in internal Department of Justice manuals or guidelines, then I expect defendant to make copies available to defen-

dant. In all other respects, however, plaintiff's *Motion to Compel* [# 57] is denied.

---

1. *Public Citizen Health Research Group v. FDA,* 997 F.Supp. 56, 72 (D.D.C.1998) ("Discovery is to be sparingly granted in FOIA actions.") *aff'd* in part, *rev'd in part & remanded on other grounds,* 185 F.3d 898 (D.C.Cir.1999).