Carl PLEASANTS, Plaintiff,

v.

Joe ALLBAUGH, Director, Federal Emergency Management Agency, Defendant.

Civil Action No. 00–3094(JMF).

United States District Court, District of Columbia.

May 22, 2002.

**8**

Jerry Robert Goldstein, Bulman, Dunie, Burke & Feld, Chartered, Bethesda, MD, for plaintiff.

Laurie J. Weinstein, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This matter is referred to me by Judge Kessler for all purposes. Having denied defendant's motion to dismiss, I now resolve *Plaintiff's Motion to Compel and to Extend Deadline for Responding to Motion for Summary Judgment* [# 18].

## BACKGROUND

Plaintiff is an African–American male who was employed by the Federal Emergency Management Agency ("FEMA") as a GS–13 program specialist. Plaintiff commenced this Title VII action alleging racial discrimination. The acts that underlie plaintiff's claims are FEMA's pre-retirement failure to upgrade his position (the "upgrade claim") and his post-retirement nonselection (the "non-selection claim") for a newly expanded GS–13/14 position.[1]

On March 7, 2001, plaintiff propounded Interrogatories and Requests for Production of Documents on defendant. Defendant submitted its Answers to Interrogatories, and its Responses to the Request for Production of Documents, on June 1 and June 19, 2001, respectively, objecting to eight (8) of the interrogatories and fifteen (15) of the document requests. Plaintiff allegedly wrote two letters to defendant on June 8 and July 21, 2001, in an effort to resolve these disputes, but defendant failed to respond. *Plaintiff's Motion to Compel* at 6. On August 15, 2001, plaintiff filed this *Motion to Compel.*

## DISCUSSION

Plaintiff moved to compel responses to interrogatories # 9–12[a], 14–15, 17–18 and production of documents set forth in requests

---

1. The facts are discussed at length in my opinion and order of February 1, 2002, denying defendant's motion to dismiss with regard to plaintiff's failure to upgrade claim. *See Pleasants v. Allbaugh,* 185 F.Supp.2d 69 (D.D.C.2002).

# 6–7, 9, 11–13, 15–16, 19, 21, 23, 25–26, 38, and 41.

Defendant primarily objects to a number of these discovery requests because they purportedly address the upgrade claim and are not calculated to lead to relevant information concerning the non-selection claim that, defendant insists, is the only claim plaintiff can press. Because I ruled plaintiff properly pled a continuing violation with respect to his failure to upgrade claim,[2] I will permit discovery on both claims.

I hasten to add, however, that there is *sub judice* in the Supreme Court a case, to be decided this term, that may radically transform the law pertaining to continuing violations of Title VII of the Civil Rights Act. *See Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008, 1015–16(9th Cir.2000), *cert. granted*, 533 U.S. 927, 121 S.Ct. 2547, 150 L.Ed.2d 715 (U.S. June 25, 2001). I have, of course, premised this decision and the decision in *Pleasants v. Allbaugh*, 185 F.Supp.2d at 69, on the law as it presently is. If, as I anticipate, the Supreme Court substantially modifies the law I may be compelled to revisit both decisions.

*Discovery Standards*

Generally, a party is entitled to discover information "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1). Moreover, a party may only obtain discovery as to a matter that is "relevant to the claim or defense of any party." *Id.; Krieger v. Fadely*, 199 F.R.D. 10, 13 (D.D.C.2001)(holding that the nature of the claims asserted defines relevancy).

In Title VII cases, plaintiffs have been permitted a very broad scope of discovery, extending to documents and information pertaining to so-called workforce data, i.e., information regarding non-party employees in plaintiff's workplace. *See Minority Employees at NASA (MEAN) v. Beggs*, 723 F.2d 958, 962 (D.C.Cir.1983)("It is well established that statistical data and comparative informa-

tion concerning an employer's treatment of minorities is relevant evidence in an individual discrimination claim against that employer."); *see also Forman v. Small*, 271 F.3d 285 (D.C.Cir.2001)(citing *MEAN*); *Miller v. Poretsky*, 595 F.2d 780, 790–91 (D.C.Cir.1978)(recognizing that acts of discrimination against non-party tenants may be admissible to show a pattern of discrimination by landlord); *White v. U.S. Catholic Conference*, 1998 WL 429842 (D.D.C. May 22, 1998); *Planells v. Howard Univ.*, 1983 WL 30372 (D.D.C. Jan. 25, 1983). In fact, some circuits have expressly held that discovery in employment discrimination suits is especially broad.[3] Nonetheless, courts remain concerned about "fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging discovery requests" and have therefore limited discovery to the issues involved in the particular case. *Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 618 (D.D.C.1983). Even in cases involving racial discrimination, where such claims, by necessity, require discovery on how others are treated, discovery "should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct." *Id.* at 618–619. As in many discovery disputes, I shall seek to find the golden mean between unduly restrictive and overbroad production.

*Temporal Scope of Discovery*

The problem of setting a time period for the discovery ordered is a perplexing one because it does not admit of a lapidary solution; life is messy and cannot be divided into neat chronological segments. In a case involving class-wide discrimination, responsible statistical analysis has to be based on enough data to make that analysis meaningful. Understandably, in such cases, courts permit discovery of data over an extensive period of time. *E.g., Rich v. Martin Marietta Corp.*, 522 F.2d 333, 342 (10th Cir.1975).

---

**2.** *Pleasants v. Allbaugh*, 185 F.Supp.2d 69.

**3.** *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir.1995); *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 658 (11th Cir.1983); *Trevino v. Cela-*

*nese Corp.*, 701 F.2d 397, 405–06 (5th Cir.1983); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343–44 (10th Cir.1975).

In an individual, disparate treatment case, the courts cannot be as sure handed. On the one hand, the defendant wonders why a plaintiff in such a case is entitled to any information other than the information pertaining to his own case. But that wonderment presupposes the existence of watertight compartments between individual, disparate treatment cases and pattern and practice cases that challenge agency- or company-wide policies and practices in terms of the effects on individuals. There are cases, and this is one of them, in which those two concepts blend or meld into an indistinguishable whole. In this case, the premise of plaintiff's upgrade claim is that he was treated unfairly by being required to do more than his actual position and that he never received the proper promotion or pay. By necessity, he must examine how the Division in which he worked treated people who were similarly situated. Were there other people who, like him, did more than they should have been required to do and did they share his race? If so, his individual claim becomes more credible because there emerges evidence that his employer treated people in a certain, unfair way because of their race. Given the nature of the showing he is required to make, it is eminently fair to strike the balance between his needs and the defendant's burden in favor of permitting discovery at some point before his request for a promotion was rebuffed in 1995.

This, of course, puts us back where we started: what should the beginning and end of the period be? Plaintiff has chosen January 1, 1992, the beginning of the year in which he began to work for the agency, which is over three years before he became Acting Chief of the Operations Services Branch. For its part, defendant is certain that plaintiff's upgrade claim is barred by the statute of limitation and would resist any discovery whatsoever other than discovery pertaining to his non-selection claim. Since I have rejected the defendant's argument, the question whether the discovery period should start on January 1, 1992 persists.

■ For present purposes, I believe that events within the three-year time period from 1992 to 1995 are relevant to his upgrade

claim. By its very nature, the comparison of the plaintiff to his colleagues and whether they suffered from being forced to do more than their position descriptions required has a temporal dimension that has to extend back to a period before he became Acting Chief of the Operations Services Branch in October, 1995, so that he can flesh out (if he can) that there was a pattern of treating people of his race differently. The exploration of this allegation requires the analysis of events that pre-date the rejection of his demand that his position warranted a promotion to GS–14. Plaintiff seeks to establish that there was a continuum of events affecting African American people that extended over the period of time he worked at FEMA and that what happened to him occurred along that continuum. To restrict discovery in this case solely to the period between the rejection of his bid to become a GS–14 to his retirement denies him a fair opportunity to establish that continuum. While I cannot pretend to be cutting a diamond, I can only say that a three-year period strikes a proper balance between his right to establish his case and the burden placed upon the defendant.

I say "for present purposes" because, as I have indicated, the Supreme Court's anticipated decision may have a dramatic effect on plaintiff's upgrade claim. I have given defendant a generous 45 days within which to produce the discovery I have ordered. Obviously, since the Supreme Court will finish its business for this term in June, we have every reason to hope that the Supreme Court's decision will issue before the deadline I have set. If defendant believes that decision obliterates plaintiff's upgrade claim, it may move to stay my order and seek reconsideration of my denial of its motion to dismiss. In the meanwhile, lest this case not progress to its conclusion, I will order that the discovery period shall extend from January 1, 1992, to October 1, 1999.

■ This period necessarily includes a window of time after plaintiff retired on January 31, 1999, until his non-selection on October 1, 1999, when plaintiff was not working for defendant. If there is information generated during this time period that is relevant to his claim, I deem it discoverable even

though it postdates his retirement. I see no basis to arbitrarily cut off the flow of discoverable information merely because some documents came into existence after plaintiff retired but before he reapplied for a position.

*Interrogatory # 9 & Requests # 16, 19 & 21:* Interrogatory # 9 and document request # 19 seek information regarding all other persons in plaintiff's division who, since January 1, 1992, performed duties that were not a part of their position description. Document request # 16 seeks all documents showing transfer or reassignment of duties between persons and positions, while request # 21 seeks documents relating to any changes of position description.

A key aspect of plaintiff's failure to upgrade claim is that plaintiff was compelled to perform duties outside his position description throughout his employment. To support this claim, plaintiff seeks information to determine whether he was the only employee so compelled. He therefore seeks to know (a) who else was assigned duties beyond their position descriptions; (b) documents that would show if any one was performing duties beyond their position descriptions; (c) transfers of reassignment of duties among persons or positions in the Division where plaintiff worked; and (d) documents that relate to changes in position descriptions in that division.

 This information is directly relevant to the issues before this court and therefore is within the permissible scope of discovery. *See Miller,* 595 F.2d at 790–91. First, knowing whether anyone else was assigned duties beyond that person's position description bears directly on plaintiff's claim that he was uniquely treated in being compelled to perform duties beyond his position description. Second, the agency's documentation of transfers of duties from one person to another or of changes in position descriptions bears on how the agency defined the duties within the Division and casts light on whether the agency truly practiced restricting employees to the duties in their position descriptions. If the agency was lax and required employees to do whatever was needed, irrespective of the position description, the fact that plaintiff's duties exceeded his position description

was not unique and is therefore not evidence of discrimination. If so, such information relates to a defense that plaintiff has a right to explore. Conversely, if the agency was strict and carefully reassigned duties or modified position descriptions the moment an employee was compelled to do more than the position description required, plaintiff's claim that he was forced to perform duties beyond his position description becomes more credible. I will therefore order defendant to respond to these requests.

*Interrogatory # 10 & Request # 11–13, 25–26 & 41:* These discovery requests pertain to information regarding desk audits. Interrogatory # 10 seeks to identify all persons who requested desk audits since January 1, 1992, the positions involved, when the requests were made, and the results thereof. Similarly, requests # 11–13 pertain to related documents.

 Defendant objects that there has been no allegation that plaintiff requested a desk audit. Perhaps. But a party may obtain discovery as to matters that are relevant to any claim or defense. Fed.R.Civ.P. 26(b)(1). This includes information not contained in the pleadings, for the very purpose of discovery is to "define or clarify issues." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Here, the desk audits are relevant because they can shed light on whether other employees also were assigned additional duties but received upgraded positions as a result of their desk audits. Again, a comparison might favor plaintiff if it were to show that other employees received favorable desk audits when they performed additional duties beyond their position descriptions. Equally possible is a comparison that disfavors him because no one received successful desk audits. Desk audit data therefore seems to be precisely the kind of statistical or comparative information that *MEAN* and *Miller* have deemed discoverable.

Defendant shall produce information as to any desk audits at any time for Mary Baldwin, Francine Plummer, Shirley Jones, Melvin Washington, and Calvin Byrd, individuals named by plaintiff as suffering the same kind

of treatment, i.e., forced to work beyond their position descriptions.

*Document requests # 25–26:* These discovery requests seek documents relating to policies on whether and how to perform desk audits (# 25) and on the retention of desk audits, position description records, and other agency records (# 26) since January 1, 1992. Both plaintiff and defendant assert the same grounds for compelling a response and for objections that were raised in Interrogatory # 10. Consequently, I will compel production of FEMA's desk audit policies and regulations (# 25) and the retention of them.

*Document request # 41:* This request seeks documents relating to any request for accretion of duties or a desk audit by Reginald Trujillo. Defendant objects, claiming that this request is vague, ambiguous, overbroad, and irrelevant.

■ First, following many other courts, I have held that I will not consider "boilerplate" objections like this. Instead, the party opposing discovery must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome. *Pro–Football, Inc. v. Harjo,* 191 F.Supp.2d 77, 80 (D.D.C.2002); *Natural Resources Defense Council v. Curtis,* 189 F.R.D. 4, 13 (D.D.C.1999); *Athridge v. Aetna Cas. & Sur. Co.,* 184 F.R.D. 181, 191 (D.D.C. 1998). The defendant's objection is therefore insufficient on its face.

In any event, if Trujillo requested accretion of duties for certain employees or desk audits but not plaintiff, the information would directly support plaintiff's claim of discrimination. Defendants shall therefore turn over all responsive documents.

*Interrogatory # 11 and Document Request # 9:* These discovery requests seek information with regard to all individuals in FEMA's Program Services Division whose position descriptions were changed or rewritten. Interrogatory # 11 seeks the person's identity, race, position and the date for which the position descriptions were changed, while document request # 9 seeks all documents relating to such changes.

■ Defendant first complains that, since plaintiff did not ask that his position description be changed, the information is irrelevant. However, information that might establish that defendant modified position descriptions for certain people but not others bears directly on plaintiff's complaint that he was treated differently because of his race.

■ Defendant also objects on the grounds that the information requested is protected from disclosure by the Privacy Act, 5 U.S.C.A. § 552(a) (1994).[4] Under the Privacy Act, Government agencies can release information about individuals only under certain circumstances, including pursuant to a court order. 5 U.S.C.A. § 552(a)(b)(11); *Broderick v. Shad,* 117 F.R.D. 306 (D.D.C.1987)(records falling within the Privacy Act may nonetheless be disclosed pursuant to a court order); *see also Weahkee v. Norton,* 621 F.2d 1080, 1082 (10th Cir.1980)(requiring production of personnel files of employees promoted over plaintiff in Title VII case over Privacy Act objection). Furthermore, the Privacy Act creates neither a qualified discovery privilege nor any other kind of privilege or bar that requires a party to show actual need as a prerequisite to invoking discovery. *Laxalt v. McClatchy,* 809 F.2d 885, 888–89 (D.C.Cir.1987). On the other hand, that a document is subject to the Privacy Act does affect the *manner* in which discovery should proceed. *Id.* at 889. Traditional devices such as protective orders and *in camera* inspection offer reliable means with which to limit liberal discovery principles. *Id.* Plaintiff has suggested a willingness to consent to an appropriate protective order. I strongly encourage the parties to reach an agreement on such a protective order, which I will be happy to sign. I therefore will order defendant to respond to interrogatory # 11 and document request # 9 once I have signed a protective order.

*Interrogatory # 12[a]:* This interrogatory asks defendant to identify all persons in FEMA's Program Services Division, since January 1, 1992, whose position was upgrad-

**4.** The Privacy Act analysis that follows applies to all of defendant's Privacy Act objections.

ed or reclassified to a higher level after they vacated the position. Interrogatory # 12[a] further seeks the race of each such person, the position and grade vacated, the grade of the upgraded or reclassified position, and the name and the race of the person who next filled the upgraded or reclassified position.

Defendant objects on the grounds of relevancy and the privacy of the employees but, without waiving its objections, indicates that it will provide the requested information for the January 1, 1998, through December 1999 period. Plaintiff replies by noting that no information had been provided as of the date of his motion. He also requests that the scope of defendant's response date from January 1, 1992.

Defendant's limiting the information to the period from plaintiff's retirement to the end of the year in which, after his retirement, plaintiff applied for and did not get the job he sought constricts the time frame too severely. That such upgrading after departure occurred while he was still working detracts from his claim that he was singled out for unfair, discriminatory conduct and he has a right to explore that potential defense. On the other hand, if no one else was treated as he claims to have been, he can advance his unique treatment as discriminatory. I will therefore order the defendant to provide the information.

*Document request # 6:* Document request # 6 seeks all documents relating to Vacancy Announcement No. 99–068–RJW including position descriptions, advertisements, applications, and crediting plans.

Defendant claims to have produced what it calls the Merit Promotion File "including the applications of the candidates, the rating and ranking sheets and the certificates of eligibles with social security numbers, telephone numbers, and addresses redacted." *Defendant's Opposition to Plaintiff's Motion to Compel* at 16. Defendant explains that the crediting plan was inadvertently disclosed in the Report of Investigation so that plaintiff has it, although defendant claims it had a meritorious objection to the production of this plan. Defendant protests that plaintiff has everything except the redacted "identifiers" which I take to mean the social security

numbers, telephone numbers, and addresses of the applicants. Plaintiff replies that there is nothing proprietary about the crediting plan or selection criteria and that "everything related" to the selection must be produced without redaction.

Frankly, the parties leave me wondering what was produced. If plaintiff has the crediting plan and the selection criteria, why is he moving to compel their production? Why does plaintiff believe that what the defendant calls "identifiers" are relevant to a discrimination claim? Does plaintiff concede the accuracy of the defendant's assertion that he obtained everything bearing on the selection except the identifiers?

Confronted with this confusing record, I will deny plaintiff's motion to compel a further response to document request # 6 without prejudice to plaintiff establishing more clearly what information in the Merit Promotion File he did not receive and why he considers the identifiers relevant to his claim.

■ *Document Request # 23.* Plaintiff seeks all performance evaluations for employees in the Operations Services Branch of the Program Services Division since January 1, 1993. Plaintiff is now prepared to limit his request to positions of GS–11 and above and to production pursuant to a protective order. In my view, that is still not good enough. It must be recalled that plaintiff does not complain that his performance evaluations were unfair, let alone discriminatory, or of any pattern of undervaluing the work of African Americans. He therefore has to argue that any other complaint of racial discrimination that someone else could make because of the denial of another employment opportunity is relevant to his claim, even though he does not claim any connection to his own discrimination claim. There is certainly no authority for this nearly infinite expansion of the notion of what is relevant to a distinct claim of racial discrimination, and I will not permit it.

■ *Interrogatory # 14:* Interrogatory # 14 asks defendant to identify all positions above a GS–4 filled in the Program Specialist Division since January 1, 1992, and to identify the grade of the position, the date it was filled, the race of the person who filled it,

and whether it was advertised. Plaintiff has indicated his willingness to consent to an appropriate protective order, so any privacy objections are moot. The only question that remains is whether a complete inventory of all positions above a GS–4 is overbroad. Plaintiffs claims that such a request is relevant to check the legitimacy of FEMA's contention that a hiring freeze prevented the promotion of plaintiff. He points to a section of the *Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment* in which defendant protested that the agency had gone through a series of personnel freezes geared toward reducing the size of the agency. These freezes, defendant protested, "would have discouraged reclassifying plaintiff's position to a higher grade." *Id.* at 18. Despite that statement in its own motion, defendant chastises plaintiff for either misunderstanding or misrepresenting its position. It now says:

> Defendant did not promote Plaintiff because Plaintiff was performing at the full potential of the position and there were no grade enhancing changes in either his position description or the duties and responsibilities of his position from 1992 until the time he retired from the Federal service in January 1999.

*Defendant's Opposition to Plaintiff's Motion to Compel* at 13.

Defendant cannot have it both ways. It cannot move for summary judgment on a basis that renders the discovery appropriate and then resist discovery by abandoning that basis. Plaintiff clearly has the right to information that contradicts defendant's claim that the hiring or promotion freezes justified the manner in which plaintiff was treated.

By the same token, discovery "should be reasonably related to the circumstances involved in the alleged discrimination" *Hardrick*, 96 F.R.D. at 618–19. Here, plaintiff's claims are primarily based on FEMA's promotion policies, particularly with regard to promoting minorities to upper level positions. Accordingly, I will limit this request to all positions in the Program Services Division from a GS–9 and above.

*Interrogatory # 15:* Interrogatory # 15 asks defendant to identify all persons who served as Acting Chief of FEMA's Operations Services Branch since January 1, 1992, and whether such person received additional pay for serving in that position. This request is relevant because plaintiff merely asks whether others were given additional compensation for serving as Acting Chief. This information may establish a pattern of discriminatory treatment and is discoverable under *MEAN* and *Miller.* Since plaintiff points to a specific document that he claims shows that a white female was paid at a GS–14 position while serving as Acting Branch Chief,[5] defendant's claim that he is merely speculating is overcome.

*Interrogatory # 's 17 & 18:* Interrogatory # 17 seeks information regarding all formal EEO complaints of race discrimination made in FEMA's Program Services Division since 1996, while interrogatory # 18 seeks information regarding lawsuits that were brought against FEMA alleging race discrimination in the Washington, D.C. office since 1996. Defendant reasserts his relevancy objections and further contends that to require a response to discovery regarding settlement of prior cases would discourage federal agencies from settling Title VII cases. Defendant will therefore only say that "there have been no findings of discrimination against the Agency originating from employees in the Program Services Division" for the time period specified in the interrogatory. *Defendant's Opposition to Plaintiff's Motion to Compel* at 15. Plaintiff, however, responds by noting that he is not requesting the terms of any settlement agreements; rather, he merely seeks information about other complaints of race discrimination.

In *Childers v. Slater*, 1998 WL 429849 (D.D.C. May 15, 1998), I held that "seeking information about all discrimination actions filed against an entire agency sweeps too broadly as such a request involves cases which are irrelevant to the issues before the

---

5. Plaintiff states that he attached to his Opposition to Defendant's Motion to Dismiss a report showing that Pauline Drury, a white female, was paid at a GS–14 level while she was Acting Branch Chief while he was not. *See Reply to Defendant's Opposition to Motion to Compel* at 3.

court." *Id.* at *4. I further noted that where plaintiff seeks information to make her case that there was a pattern of discrimination within her division, discovery will be permitted to the extent that it is tied to the allegations in her complaint. *Id.* As with other discovery requests, the proper scope of discovery seeking other complaints of discrimination against defendant must be limited in time, type of action complained of or type of discrimination alleged. *Id.* Consequently, interrogatories should be limited to complaints based on race and in the particular division(s) where plaintiff worked.

 Applying these principles to the present case, I will permit interrogatory # 17 because, unlike *Childers,* it is narrowly tailored to EEOC complaints of the same type, i.e., race discrimination, and it is confined to FEMA's Program Services Division. On the other hand, I will not permit interrogatory # 18 since its scope is not confined to allegations of race discrimination in the office where plaintiff worked.

Finally, I see no reason why disclosure of this information will inhibit the settlement of Title VII cases. Simply knowing that a complaint has been made, just or unjust, will hardly create a deterrent to settling future cases.

*Document request # 7:* Document request # 7 seeks all documents relating specifically to the selection of Virginia Akers ("Akers") for the position of Chief, Operations Services Branch in 1997, for which plaintiff also applied. Plaintiff requests drafts of the announcements, position descriptions and drafts of same, advertisements, applications, crediting plans, summary information sheets, best qualified lists, and certificates of eligibles. Defendant objects that the selection of Akers is irrelevant because plaintiff has never claimed that her selection was discriminatory. Plaintiff therefore must protest that, if the selecting official favored Akers because of her race, it would be more likely that the same selecting official favored the white person who he or she selected in 1999 when plaintiff failed to get the job. The rub is that unless the selecting official was the same in both cases the inference that official acted with the same intent in 1999 as 1997 cannot

be drawn. Thus, unless plaintiff shows that Trujillo or some other person made the 1997 and 1999 decisions, the selection of Akers in 1997 hardly bears on Trujillo's intent in 1999. Since plaintiff makes no such claim, the selection of Akers is indeed irrelevant to his claim.

*Document request # 15:* This request seeks documents relating to all of the budgeted positions in FEMA's Program Services Division since January 1, 1992. Defendant claims that such a request is overbroad, but without waiving his objections, has agreed to provide the requested documents for each fiscal year after 1996. Defendant shall produce those documents for each fiscal year since 1992.

*Document request # 16:* This request seeks documents showing any transfer or reassignment of duties and responsibilities between persons or positions in FEMA's Program Services Division for each fiscal year since January 1, 1992. Plaintiff notes that his claims are premised on performing duties outside his job description and therefore this request is relevant. While I agree with plaintiff for the reasons I have explained, a request that extends to any transfer or reassignment is indeed too broad. Accordingly, I will order defendant to produce documents reflecting the transfer or reassignment of duties or responsibilities between persons or positions in FEMA Program Services Division for each fiscal year since 1992, limited to GS–9 positions and above.

*Document request # 38:* This request seeks all reports, studies, memoranda, or other documents relating to any problems of race discrimination in FEMA's Washington, D.C. office since January 1, 1992. Because this case involves a racial discrimination claim, this information is eminently relevant, and I will compel a response to this request, provided the information is limited to the division where plaintiff worked. *Childers v. Slater,* 1998 WL 429849 *3 and cases cited therein.

## CONCLUSION

Upon consideration of the motion, the memoranda in support thereof and in opposi-

tion thereto and the entire record, I will grant in part and deny in part plaintiff's motion to compel. A separate order accompanies this opinion.

### ORDER

In accordance with the attached opinion, plaintiff's motion to compel is ordered in part and denied in part. It is therefore, hereby,

**ORDERED** that *Plaintiff's Motion to Compel and to Extend Deadline for Responding to Motion for Summary Judgment* [# 18] is **GRANTED IN PART AND DENIED IN PART.** It is further hereby

**ORDERED** that defendant shall provide the discovery I have permitted to plaintiff within 45 days of the date of this order.

**SO ORDERED.**